**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT PADUCAH**
**CIVIL ACTION NO. 5:06CV-P38-R**

**ALANDO SUBLETT** *et al.*                                                          **PLAINTIFFS**

**v.**

**HARRY CHRISTOPER VINSON** *et al.*                                          **DEFENDANTS**

### MEMORANDUM OPINION

Six *pro se* prisoners (Alando Sublett, James DeBow, William Evans, Daniel Lindsey, Donnie Ashby, and Aaron Burnett) filed a complaint pursuant to 42 U.S.C. § 1983 (DN 1). On that same date, a seventh inmate, James Dunn, filed a motion to file a supplemental complaint (DN 6), which the Court has granted (DN 7). Thereafter, the Court dismissed Lindsey and Burnett as Plaintiffs for abandonment and failure to prosecute, respectively (DNs 25 & 28). This matter is currently before the Court for screening of the complaint and supplemental complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, a portion of the claims will be dismissed and a few claims will continue.

### I. SUMMARY OF CLAIMS

**A. Complaint**

Because Plaintiffs Lindsey and Burnett have been dismissed from this action, the Court will not summarize their claims, and, hereinafter, "Plaintiffs" collectively refers to the four Plaintiffs listed in the complaint -- Sublett, DeBow, Evans, and Ashby.[1] Plaintiffs allege violations of their state and federal rights "[d]ue to defendants promugation of policy, which caused plaintiffs to be wrongfully punished by confinement in segregation for an unreliable field

---

[1] Because Plaintiff Dunn filed a separate supplemental complaint containing his allegations, Dunn's claims will be addressed separately following a summarization of the complaint.

urine 'stick' test." Plaintiffs specifically allege a violation of their federal rights under the Eighth and Fourteenth Amendments to the U.S. Constitution but fail to indicate which state rights purportedly have been violated. As Defendants, Plaintiffs name Kentucky State Penitentiary ("KSP") Corrections Officers Harry Christoper Vinson, Joe Keene, M. Asbridge, and Jane and John Does in their individual capacities. Plaintiffs also name the following persons as Defendants in their individual and official capacities: KSP Captain Junior Ross; KSP Internal Affairs Officer Joe Dunlap, KSP Procedures Officer Byron Jasis, KSP Deputy Warden of Programs Nancy Doom, KSP Deputy Warden for Security Rick Pershing, KSP Warden Glenn Haeberlin, and Kentucky Department of Corrections ("KDOC") Commissioner John D. Rees.

According to the complaint, on May 17, 2005, Plaintiff Sublett was given a stick screening urine test by Defendants Vinson and John Doe. Not being pleased with the results, Defendant Vinson destroyed Plaintiff Sublett's urine sample and ordered another urine sample from Plaintiff Sublett with Defendant Asbridge as a witness. Plaintiff Sublett was immediately sent to his cell without an opportunity to witness the sealing of the sample or its chain of custody. About 30 minutes later, Plaintiff Sublett was placed in the Administrative Segregation Unit as a result of the "unreliable stick testing."

The next morning, a message was relayed to Plaintiff DeBow, a grievance aide, in reference to the above incident. Plaintiff DeBow conferred with Plaintiff Evans, a legal aide, to assist Plaintiff Sublett. Plaintiff Evans sent a memorandum to Defendants Pershing, Jasis, and Haeberlin requesting the release of Plaintiff Sublett by reason of a due process violation.

On the following day, May 19th, Plaintiffs DeBow and Evans were given the same stick test by Defendants Vinson and Keene. Plaintiffs DeBow and Evans were ordered to return to

their cells, and about 45 minutes later, they were placed in the "'Super Max' Administrative Segregation Unit (7 Cellhouse)" by order of Defendant Ross based on a positive urine stick test. While being detained, Plaintiffs DeBow and Evans were "forced into a nude 'strip search,' hair cut, shave and restricted from their jobs, and all priviliges they had in the General Population and Honor Housing Unit."

Plaintiffs allege that from May 17-19th, Plaintiffs Sublett, DeBow, Evans and Ashby were "unfairly detained." (They fail to describe, however, the circumstances under which Plaintiff Ashby was detained.).

On May 24th, Defendant Haeberlin sent Plaintiff Evans a letter advising that the stick tests were under review. On May 27th, Defendant Dunlap reviewed the lab report results, which were negative for drugs with respect to all Plaintiffs. On that date, Plaintiffs DeBow and Evans were released, and on June 20th, all Plaintiffs filed a group grievance. On July 4th, Plaintiff Evans was again subjected to another urine test, and Plaintiff DeBow was paged to undergo another test but the test was not conducted because there were no urine cups.

Plaintiffs attached numerous documents to the complaint, including, but not limited to, grievances, detention orders, negative lab results, and a document specifying the number of days each Plaintiff remained in segregation. According to the document, Sublett was segregated for 7 days; DeBow and Evans were segregated for 9 days; Ashby was segregated for 6 days; and Dunn was segregated for 17 days.

As relief, Plaintiffs request compensatory and punitive damages and declaratory and injunctive relief. They seek a declaration that Defendants Vinson, Keene, Asbridge, and Jane and John Does "acted with Deliberate Indifference and violated Plaintiffs rights under the Eighth

Amendment" and "violated Plaintiffs Due Process Rights by the procedures and types of testing used in violating Plaintiffs Fourteenth Amendment Rights."  They also seek a declaration that Defendants Vinson, Keene, Jasis, Pershing, Haeberlin and Doom violated Plaintiffs Evans and DeBow's "Rights by the course of using Interference, Punishment, Retaliation and Harassment in violation of the Eighth and Fourteenth Amendment[s]."  They additionally seek a declaration that Defendants Ross and Jane and John Does violated the Eighth and Fourteenth Amendments in ordering Plaintiffs confined in the "'Super Max'" and Administrative Segregation Units.  Plaintiffs further seek injunctions directing Defendants (1) to comply with Corrections Policies and Procedures; (2) to "cease from further Interference, Punishment, Retaliation and Harassment"; and (3) to cease using the "'unreliable' testing as a source to impose punishment."

## B. <u>Supplemental Complaint</u>

The supplemental complaint pertains only to the allegations raised by Plaintiff Dunn.  He, too, challenges the reliability of the field stick test used at KSP and Defendants' use of the "'lock-up' procedures <u>before</u> a proper 'lab testing' is performed."  Plaintiff Dunn names Rees as Defendant in his individual and official capacities and names Jasis, Ross, Pershing, and Dunlap as Defendants in their individual capacities.  In addition, he names KSP Internal Affairs Officers Will Thomas and Mike Ray and Warden Thomas Simpson as Defendants in their individual and official capacities, and he names the following KSP officials as Defendants in their individual capacities:  Harry Whisman, Senior Captain; David Lane, Lieutenant and Adjustment Committee Chair; Shaw and Edwards, Correctional Officers; and "John or Jane Doe's involved in the incidents as presented herein."

Factually, Plaintiff Dunn claims that on October 16, 2005, Defendants Shaw and Edwards performed three separate stick tests on him, asked him to step out of the room, and then a few minutes later asked him to return to witness the sealing of the urine sample. Plaintiff advised Defendants that his leaving the room violated the "chain of custody" of the sample. Upon being informed of the three positive stick tests, Defendant Lane ordered Plaintiff handcuffed and placed into the "Administrative/Disciplinary Segregation Unit" for possible use of illegal drugs. After two weeks of being in segregation, Plaintiff asked for his outside lab results via an Open Records Request. On November 1st, Defendants Thomas, Ray and Dunlap informed him that his lab results were "positive for 'THC'" but that they were going to let him out of the segregation unit anyway. About two days later, Plaintiff received his lab report which confirmed that his test was negative and revealed that the results were reported on October 18th rather than November 1st, resulting in him being locked up longer than necessary. Plaintiff claims that the foregoing actions of Defendants violated the Eighth and Fourteenth Amendments.[2]

Plaintiff additionally alleges that Defendants Jasis, Ross, Whisman, and Pershing were aware of the unreliable testing but did nothing. Plaintiff Dunn seeks the same type of relief sought by Plaintiffs Sublett, DeBow, Evans, and Ashby in the original complaint.

---

[2]In the supplemental complaint, Plaintiff Dunn also alleges, "Defendants have ignored [] Plaintiff's 'Mental Health' condiction, and have therefore; inhanced his stress level thereof." This is the only sentence in the entire supplemental complaint alleging that Defendants have ignored a mental health condition, and there are simply no facts in support of this broad claim. The Court will, therefore, not consider that claim.

## II. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*,114 F.3d at 604. A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, -- U.S. -- , 127 S. Ct. 1955, 1965 (2007) (internal citations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, -- U.S. -- , 127 S. Ct. at 1964-65 (citations omitted; alternation in *Twombly*). In reviewing a complaint under this standard, the Court must construe the pleading in the light most favorable to Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

## III. ANALYSIS

### A. Official capacity claims for damages

The official capacity claims for damages against Defendants must be dismissed on two bases. First, Defendants, as state officials and employees sued in their official capacities for

damages, are absolutely immune from § 1983 liability under the Eleventh Amendment to the United States Constitution. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). Second, Defendants are not "persons" subject to suit within the meaning of § 1983 when sued in their official capacities for monetary damages. *Will*, 491 U.S. at 71 (concluding that a state, its agencies, and its officials sued in their official capacities for monetary damages are not considered persons for the purpose of a § 1983 claim); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (same). Consequently, the § 1983 official capacity claims for damages must be dismissed.

### B. Placement in segregation

#### 1. Fourteenth Amendment-due process

When a reviewing court addresses an inmate's Fourteenth Amendment claim, it must first discern whether the inmate possesses a liberty interest that is protected by the Due Process Clause. *Hahn v. Star Bank,* 190 F.3d 708, 716 (6th Cir. 1999). Plaintiff has essentially asserted a liberty interest in freedom from disciplinary segregation. Prisoners, however, possess liberty interest in freedom from segregation *only if* their confinement constitutes an "atypical and significant hardship in relation to the ordinary incidents of prison life." *Sandin v. Connor,* 515 U.S. 472, 484 (1995). Noting that punishment of incarcerated prisoners is aimed at effectuating prison management and prisoner rehabilitative goals, the Court found that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. The prisoner plaintiff in *Sandin* was found

7

guilty of a disciplinary charge and sentenced to 30 days of disciplinary segregation. The Court concluded:

> Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest. The record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody. We note also that the State expunged Conner's disciplinary record with respect to the "high misconduct" charge nine months after Conner served time in segregation. Thus, *Conner's confinement did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction.* Indeed, the conditions at Halawa involve significant amounts of "lockdown time" even for inmates in the general population. Based on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment.

*Sandin*, 515 U.S. at 486 (emphasis added).

Although the *Sandin* Court found no liberty interest in the 30-day placement in segregation, more recently, in *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court found that Ohio prisoners possess a liberty interest in avoiding assignment to Ohio State Penitentiary ("OSP"), the state's only Supermax facility,[3] as the totality of the conditions at OSP "imposes an atypical and significant hardship under any plausible baseline." *Id.* at 223. The Court reasoned,

> For an inmate placed in OSP, almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement

---

[3]"Supermax facilities are maximum-security prisons with highly restrictive conditions, designed to segregate the most dangerous prisoners from the general prison population." *Wilkinson*, 545 U.S. at 213.

> disqualifies an otherwise eligible inmate for parole consideration. *Austin I*, 189 F. Supp. 2d, at 728. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context. It follows that respondents have a liberty interest in avoiding assignment to OSP. *Sandin*, *supra*, at 483, 115 S. Ct. 2293.

*Wilkinson*, 545 U.S. at 223-24.

### a. Plaintiffs Ashby, Sublett, and Dunn

In the complaint, the only specific allegation pertaining to Plaintiff Ashby is that from May 17th to 19th, Plaintiff Ashby "was unfairly detained." Attachments to the complaint reveal that a urine sample was collected from Ashby on May 19, 2005, that the lab results were negative as reported on May 26, 2005, and that Ashby was in segregation for eight days. Thus, beyond the simple fact that Ashby was placed in segregation for eight days pending lab results, he asserts no additional facts which illustrate how his particular confinement itself imposed an atypical and significant hardship. The same is true of Plaintiff Sublett's seven-day segregation stay and Plaintiff Dunn's seventeen-day segregation stay. And the fact that Plaintiff Dunn had to stay a few extra days in segregation even though laboratory results revealed that the urine test was negative does not alter this conclusion.

*Sandin* specifically rejected the idea that mere disciplinary measures taken by state authorities without more violate the Due Process Clause, *Sandin*, 515 U.S. at 484, and the Supreme Court further cautioned courts "to afford appropriate deference and flexibility to state [prison] officials trying to manage a volatile environment." *Id.* at 482. Because Plaintiffs Ashby's, Sublett's, and Dunn's allegations failed to establish that their confinement was an atypical and significant hardship, the Court concludes that they failed to establish the requisite

9

liberty interest in freedom from segregation to which due process protections apply. Their Fourteenth Amendment claim must therefore be dismissed.

### b. **Plaintiffs Evans and DeBow**

Plaintiffs Evans and DeBow allege that they were placed in a different segregation unit than the other Plaintiffs. Specifically, they allege that they were placed in the "'Super Max' Administrative Segregation Unit (7 Cellhouse)" by order of Defendant Ross based on a positive urine stick test. While being detained, Plaintiffs DeBow and Evans were "forced into a nude 'strip search,' hair cut, shave and restricted from their jobs, and all priviliges they had in the General Population and Honor Housing Unit." The Court will allow Plaintiffs Evans' and DeBow's Fourteenth Amendment claim to proceed against Defendant Ross in his individual and official capacity.

### 2. **Eighth Amendment-cruel and unusual punishment**

The Supreme Court has held that the Eighth Amendment prohibition against cruel and punishment "prohibits punishments which, although not physically barbarous 'involve the unnecessary and wanton infliction of pain' . . . . " *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). To establish an Eighth Amendment violation premised on unconstitutional conditions of confinement, an inmate must show that he has been deprived of the minimum civilized measures of life's necessities. *Id.* at 347; *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Plaintiffs Ashby, Sublett, and Dunn have wholly failed to articulate any facts which rise to the level of an Eighth Amendment violation. They fail to allege any specific risk of harm that they suffered as a result of their confinement. Rather, the only fact Plaintiffs allege with respect to this particular claim is the fact *that* they were confined in segregation, and mere placement in

segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). The Court, however, will allow Plaintiffs Evans' and DeBow's Eighth Amendment claims to proceed against Defendants Vinson and Keene in their individual capacities and against Defendants Jasis, Pershing, Doom, and Haeberlin in their individual and official capacities.

## C. Reasonableness of urine tests/selection process

In the complaint, Plaintiffs contend that "[t]he actions of defendants [] Vinson, [] Keene, [] Asbridge and John (or) Jane Doe's, in their selection process to whom was chosen to use the unreliable 'stick type' test upon, Maliciously and Sadistically constituted a Deliberate Indifference in violation of the Eighth Amendment." While Plaintiffs bring this challenge under the Eighth Amendment, *see Hudson v. Palmer*, 468 U.S. 517, 530 (1984) (holding that the Eighth Amendment provides a remedy for "calculated harassment unrelated to prison needs"), the Court also construes this claim as arising under the Fourth Amendment. *See Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 617 (1989) ("Because it is clear that the collection and testing of urine intrudes upon expectations of privacy that society has long recognized as reasonable, the Federal Courts of Appeals have concluded unanimously, and we agree, that these intrusions must be deemed searches under the Fourth Amendment.").

As mentioned earlier in the Memorandum Opinion, the complaint contains scant facts as it relates to Plaintiff Ashby. The complaint, therefore, contains no facts setting forth any Eighth Amendment harassment or Fourth Amendment unreasonable search claim. Likewise, in the supplemental complaint, Plaintiff Dunn fails to demonstrate any harm or risk of harm arising from Defendants Shaw's and Edwards' use of an unreliable stick test, and he makes no challenge

11

to the testing selection process. He merely broadly alleges in a conclusory fashion that "[t]he actions of Defendants c/o Shaw and c/o Edwards, knowingly used such unreliable 'stick' test upon Plaintiff, Malicously and Sadistrically constuted a Deliberate Indifference in violation of the Eighth Amendment." Plaintiff Dunn has, therefore, also failed to state a viable Fourth or Eighth Amendment claim arising out of the reasonableness of the urine test/selection process. The Court, however, will allow Plaintiff Sublett's[4] Eighth and Fourth Amendment claims regarding the reasonableness of the urine tests to continue against Defendants Vinson and Asbridge in their individual capacities and will allow Plaintiffs Evans' and DeBow's[5] Eighth and Fourth Amendment claims to proceed against Defendants Vinson and Keene in their individual capacities and against Defendants Pershing, Jasis, and Haeberlin in their individual and official capacities.

**D. Retaliation Claim**

Retaliation for the exercise of a constitutional right is itself a violation of the Constitution actionable under § 1983. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "In a retaliation claim . . . the harm suffered is the adverse consequences which flow from the inmate's constitutionally protected action. Instead of being *denied* access to the courts, the prisoner is penalized for actually exercising that right." *Id.* (emphasis in original).

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct;

---

[4] For instance, Plaintiff Sublett alleges, "Not being pleased with the results of this test done by John Doe, Officer [] Vinson, destroyed plaintiff Subletts' urine and ordered another [urine] cup from him with officer M. Asbridge as a witness."

[5] Plaintiffs Evans and DeBow allege that they were subjected to the urine tests for harassment purposes after complaining on a couple of occasions about the administration of the tests.

   and (3) there is a causal connection between elements one and two–that is, the
   adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id.*

  Plaintiffs Sublett, Ashby, and Dunn fail to allege any facts which would state a viable retaliation claim. Plaintiffs Evans and DeBow, however, allege that they were selected for drug testing after they complained to prison officials about the urine testing. The Court will allow Plaintiffs Evans' and DeBow's retaliation claims to proceed against Defendants Vinson and Keene in their individual capacities and Defendants Pershing, Jasis, and Haeberlin in their individual and official capacities.

**E. State-Law Claims**

  Plaintiffs broadly allege a violation of state law. Because they do not identify any specific state law(s) which they contend has been violated, the state-law claims will be dismissed without prejudice.

### IV. CONCLUSION

  For the reasons set forth more fully above, all claims will be dismissed except for the following claims: (1) Plaintiffs Evans' and DeBow's Fourteenth Amendment claims against Defendant Ross in his individual and official capacity; (2) Plaintiffs Evans' and DeBow's Eighth Amendment claims pertaining to their placement in segregation against Defendants Vinson and Keene in their individual capacities and against Defendants Jasis, Pershing, Doom, and Haeberlin in their individual and official capacities; (3) Plaintiff Sublett's Eighth and Fourth Amendment claims regarding the reasonableness of the urine tests against Defendants Vinson and Asbridge in their individual capacities and Plaintiffs Evans' and DeBow's Eighth and Fourth Amendment claims regarding the reasonableness of the urine tests/selection process against

Defendants Vinson and Keene in their individual capacities and against Defendants Pershing, Jasis, and Haeberlin in their individual and official capacities; and (4) Plaintiffs Evans' and DeBow's retaliation claims against Defendants Vinson and Keene in their individual capacities and Defendants Pershing, Jasis, and Haeberlin in their individual and official capacities.

The Court will enter a separate Order of dismissal and a separate Scheduling Order governing the development of the continuing claims.

Date:

cc:	Plaintiffs, *pro se*
	General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.005