UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:06-CV-00038-TBR

**WILLIAM EVANS**                                                                                          **PLAINTIFF**

**v.**

**HARRY VINSON,** *ET AL.*                                                                           **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Defendants' motion for summary judgment. Defs.' Mot. Summ. J., Docket Number ("DN") 96. Despite ample opportunity to respond, the Plaintiff has failed to do so. The Court will now proceed without the benefit of a response. Having considered the matter and being sufficiently advised, the Defendants' motion is DENIED.

**I.**

This case is before the Court subsequent to the Plaintiff's appeal from a grant of summary judgment. The Sixth Circuit Court of Appeals affirmed in part, reversed in part, and remanded to this Court. *See Evan v. Vinson*, 427 F. App'x 437 (6th Cir. 2011).

The Sixth Circuit's opinion narrowed the two remaining issues. The first issue is whether a drug test given to the Plaintiff on May 19, 2005, was an unreasonable search that violated the Fourth Amendment. Viewing the facts in a light most favorable to the Plaintiff, the Court finds that a genuine dispute exists as to whether the drug test administered to the Plaintiff was "for cause" or was "random." This distinction is of paramount importance. If tested for cause, the Defendants must still show that the test was reasonable under the circumstances. But, if tested pursuant to prison policy, the test did not violate the Fourth Amendment because random drug tests in a prison setting have been adjudged to be reasonable. Second, the Court must consider

1

the Plaintiff's First Amendment retaliation claim. The Court finds that summary judgment is inappropriate on this claim because a genuine dispute exists as to each element of the claim.

## II.

Plaintiff William Evans ("Evans"), a *pro se* inmate, brings this § 1983 action claiming that seven prison officials at the Kentucky State Penitentiary ("KSP") - Defendants Harry Vinson, Nancy Doom, Glenn Haeberlin, Byron Jasis, Joe Keene, Rick Pershing, and Junior Ross - violated his First and Fourth Amendment rights during events taking place at the prison in May 2005.

On May 17, 2005, Alando Sublett ("Sublett"), an inmate at KSP, was given a "stick test" - a urine test used in the field to screen for illegal drugs - by Defendant Vinson and another correctional officer, who served as a verifying witness. Vinson was allegedly displeased with the results, destroyed Sublett's first test, and ordered another with a different witnessing officer. After being administered the second test, Sublett was ordered to return to his cell before the sample was sealed, a practice violating KSP's drug-testing policy. Shortly thereafter, Sublett was removed from his cell and placed in administrative segregation in "3 Cellhouse" because his second stick test was positive for the presence of drugs. The Defendants sent an additional sample to Aegis Sciences Corporation ("Aegis") for further testing and confirmation of the field results.

The following day, May 18, 2005, James DeBow ("DeBow"), an inmate grievance aide, received a message from Sublett about these events. Prompted by Sublett's message, DeBow sought Evans's assistance in obtaining Sublett's release from administrative segregation. Evans, who is an inmate legal aide at KSP, sent a memorandum to Defendants Pershing, Jasis, and Haeberlin requesting that Sublett be released from administrative segregation on due process

grounds.

The next day, May 19, 2005, an Aegis report showed that Sublett's stick test was a "false-positive" and that he had tested negative for the presence of drugs. Sublett was thereafter released from administrative segregation. On the same day, Vinson administered stick tests to both DeBow and Evans, with Defendant Kenne serving as the witnessing officer. After the tests, DeBow and Evans returned to their cells, and forty-five minutes later they were placed in the "SuperMax Administrative Segregation Unit (7 Cellhouse)" because they allegedly tested positive for drugs. Evans's detention order states that he was placed in administrative segregation "for investigation into Illegal Drug Activity within the institution. This Action was taken for the Safety of Staff and inmates, and the safe and secure operation of this institution." Detention Order of May 19, 2005, DN 96-3. Evan now claims that he was given the test and placed in segregation in retaliation for providing legal assistance to Sublett.

On May 24, 2005, five days after detention, Defendant Haeberlin advised Evans that the stick tests were under review, and on May 26, 2005, the samples collected from Evans on May 19 were sent to Aegis. It is important to note that the May 19 samples listed the "Reason for Testing" as "Reasonable Cause," not "Random." Aegis Report, DN 96-5, p. 1-2. After further review, Aegis determined that Evans's test was negative for the presence of drugs, and he was released from segregation on May 27, 2005.

In their present motion for summary judgment, the Defendants argue that Evans was tested on May 19, 2005, solely because his name appeared on a list of individuals randomly selected for testing pursuant KSP's drug-screening policy. To that end, they have included a memorandum from Defendant Junior Ross, the drug screening coordinator at KSP. *See* May 4, 2005 Memo. from Junior Ross, DN 96-6. That document provides:

> Attached is the random list of Drug Screen Inmates for May, 2005. Please assign trained staff to conduct these tests. We are required to test 10% of the population. This list contains 126 names to allow for transfers and releases and still meet the required 84 tests. You need to have the drug-screens completed no later than the 20th[] of the month. Please forward all Employer copies of the urine samples paper work to the Administrative Supervisor[.] The inmate gets the green copy, the front blue copy goes with the specimen, all other copies come to me . . . .

*Id.* at p. 1. Evans and DeBow are included on the randomly generated list of inmates to be tested during May 2005. *Id.* at p. 2. Sublett is not included. Accordingly, Evans was on the randomly generated list and potentially selected for testing at least fifteen days prior to being tested on May 19, 2005. Based on this, the Defendants argue that Evans's May 19 test was conducted pursuant to policy and did not violate Evans's Fourth Amendment rights.

Evans was tested again on July 4, 2005. *See* Aegis Report, DN 96-5, p. 3-4. He was also included on the list of names randomly selected for testing in that month. *See* July 1, 2005 Memo. from Junior Ross, DN 96-7, pp. 1, 3. The major difference between the tests given to Evans in May and July is that the Aegis report for the May 19 test states that Evans was tested for "Reasonable Cause," while the July 4 test states that his test was "Random." Aegis Report, DN 96-5, pp. 2, 4.

### III.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether

the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## IV.

The Defendants have moved for summary judgment on Evans's causes of action arising under the Fourth and First Amendments. The Court addresses each claim in turn.

### A.

The Fourth Amendment protects individuals, including prisoners, from unreasonable searches and seizures. Drug tests, including the "stick test" used in this case, "are undeniably searches for Fourth Amendment purposes . . . ." *Pendleton v. Vance*, No. 94-6468, 1995 U.S. App. LEXIS 35935, *5 (6th Cir. Oct. 5, 1995) (citing *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 617 (1989)). "Urinalysis is analogous to body cavity searches and blood tests for Fourth Amendment purposes, and these latter inmate searches are constitutional if 'reasonable.'" *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 559-60 (1979). Accordingly, the first issue is whether the drug test administered to Evans on May 19, 2005, was reasonable.

Random drug tests conducted pursuant to prison policy have repeatedly been held to be reasonable under the Fourth Amendment. *See, e.g.*, *Lucero v. Gunter*, 17 F.3d 1347, 1350 (10th

5

Cir. 1994) ("[T]he random urine collection and testing of prisoners is a reasonable means of combating the unauthorized use of narcotics and does not violate the Fourth Amendment."). Random drug testing passes Fourth Amendment scrutiny because it is "reasonably related to legitimate penological interest and does not constitute an exaggerated response to prisoner concerns." *Gibbs v. Johnson*, No. 95-1339, 1995 U.S. App. LEXIS 38459, *4 (6th Cir. Dec. 12, 1995) (citing *Turner v. Safley*, 482 U.S. 78, 84-91 (1987)). Thus, the Defendants argue that Evans's May 19 "stick test" did not violate the Fourth Amendment because it was administered pursuant to a policy of random drug testing. The Court disagrees and finds that a genuine dispute exists regarding whether Evans's May 19 test was administered pursuant to prison policy.

Evidence in the record clearly contradicts the Defendants' argument that Evans was tested pursuant to prison policy. Specifically, the Aegis lab report for the May 19 test states that the "Reason" for the test was "Reasonable Cause." Aegis Report, DN 96-5, p. 2. A subsequent Aegis lab report for the test administered to Evans in July 2005 lists the "Reason" for testing as "Random." *Id.* at p. 4. Clearly, a difference exists between "Reasonable Cause" and "Random," and the Defendants have not presented evidence that would account this difference. Despite Evans's failure to respond to the Defendants' motion, this conflicting evidence creates a genuine factual dispute as to whether Evans was randomly tested pursuant to prison policy or was tested for cause.

Even if tested for cause, the Defendants may still be entitled to summary judgment if they show that the May 19 test was reasonable under the circumstances. As stated by the court of appeals in this case, "[n]on-random searches are constitutional if they are reasonable." *Evans v. Vinson*, 427 F. App'x 437, 443-44 (6th Cir. 2011) (citing *Bell*, 441 U.S. at 559). "The test of

6

reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell*, 441 U.S. at 559.

In the present case, the Defendants only move for summary judgment on grounds that the drug test was reasonable because administered pursuant to a policy of random drug testing. The Defendants have not argued that the test was reasonable on grounds independent of or separate from prison policy. Having failed to assert alternative grounds for the test, the Defendants have produced no evidence upon which the Court could find that the test given to Evans, even if given for cause, was reasonable under the circumstances. For this reason, summary judgment is inappropriate, and Evans's Fourth Amendment claim will proceed.

**B.**

Evans also alleges that the Defendants tested and placed him in administrative segregation in retaliation for filing a grievance on Sublett's behalf. According to Evans, the Defendants' actions violated his First Amendment rights. To state a First Amendment retaliation claim the plaintiff must show three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 379, 394 (6th Cir. 1999) (en banc) (plurality opinion) (citations omitted). The Court addresses each element in turn.

**1.**

"An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (citing *Noble*

7

*v. Schmitt*, 87 F.3d 157, 162 (6th Cir.1996)). When that right is limited or otherwise curtailed, the inmate may pursue his claims with the help of others, including so-called "jailhouse lawyers." It must be noted, however, that jailhouse lawyers do "not have an independent right to help other prisoners with their legal claims." *Id.* at 395 (citing *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993)). Instead, any claim accruing to Evans for retaliation is wholly derivative of Sublett's right of access to the courts. *Hopkins*, 10 F.3d at 378 ("[C]ourts have recognized that prisoners are entitled to receive assistance from jailhouse lawyers where no reasonable alternatives are present and to deny this assistance denies the constitutional right of access to the courts."). "Thus, only if [Evan's] assistance is necessary to vindicate [Sublett's] right of access to the courts can [Evans], too, state a claim for retaliation." *Thaddeus-X*, 175 F.3d at 395.

In the present case, the court of appeals acknowledged that "Evans has not alleged or presented evidence tending to show that Sublett was unable to file his own complaint or grievance, or that Evans's help was otherwise necessary." *Evans*, 427 F. App'x at 445. Despite this, and based on circuit precedent in *Hopkins*, the court found "it equitable to reverse the district court's grant of summary judgment on this claim and remand to allow Evans to amend his complaint and present evidence that Sublett had no reasonable alternative to his assistance." *Id.*

After remand to this Court, Evans amended his complaint in compliance with the Sixth Circuit's opinion. *See* Am. Compl., DN 81. Evans now alleges that Sublett sought his legal assistance because no reasonable alternative was available. Specifically, Evans alleges that Sublett, as an inmate in administrative segregation, was "restricted from any legal materials, [i.e.,] law publications, copy machine access, visit[s] or meeting[s] with any legal aide, or any other materials to pursue legal matters." *Id.* at p. 2. These allegations are sufficient to support a

8

claim that Evans served as Sublett's only reasonable alternative for exercising his right to access the court system.

The claims asserted in Evans's amended complaint are analogous to, and perhaps even more restrictive than, those in *Thaddeus-X*. In that case, one plaintiff, Thaddeus-X, assisted another plaintiff, Bell, in accessing the courts. *Thaddeus-X*, 175 F.3d at 395. The complaint alleged that Bell had no knowledge of the law and could not "access the court in any meaningful way absent [Thaddeus-X's] assistance." *Id.* Additionally, Bell was confined to "administrative segregation and could only access the library by requesting books by title." *Id.* at 396. In the present case, Evans alleges that not only did Sublett lack knowledge of the law, but that his administrative segregation prevented him from accessing any legal materials. Am. Compl., DN 81, p. 2. Whereas Bell could request legal materials in administrative segregation, Sublett was allegedly prohibited from researching his claim altogether, making Evans's assistance all the more necessary. Giving a liberal reading to Evans's *pro se* pleadings, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the Court finds that he has sufficiently alleged that he was Sublett's only reasonable means of accessing the courts. Moreover, the Defendants have failed to present evidence tending to show that Sublett had any alternative other than Evans or another inmate legal aid. Accordingly, Evans has alleged sufficient facts to sustain a claim that he engaged in protected conduct under the first element of a First Amendment retaliation claim.

**2.**

In addition to protected conduct, the Court must consider whether "an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct." *Thaddeus-X*, 175 F.3d at 394. The Sixth Circuit previously found, and this Court agrees, that there is sufficient evidence to determine that an adverse action was taken

against Evans.

> It is undisputed that Evans was administered a drug test and placed in administrative segregation pending investigation into possible drug activity. Evans contends that Defendants also did not maintain the proper chain of custody for that test. These contentions are supported by evidence in the record and sufficient to deter a person of ordinary firmness from assisting other prisoners in filing legal complaints and grievances.

*Evans*, 427 F. App'x at 446. The Defendants administered a drug test to Evans and placed him in administrative segregation. This is the type of action that would deter another of ordinary firmness from engaging in the same or similar conduct out of fear of retaliation.

**3.**

Finally, the Court must consider whether there was a causal connection between the protected conduct and the adverse action, "that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d at 394. Under this element "the subjective motivation of the defendants is at issue." *Id.* at 399. Because subjective intent can rarely be proven by direct evidence, "circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate." *Id.* Once the plaintiff has met his burden on this element, the burden shifts to the defendant, and if he "can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on the summary judgment." *Id.*

On appeal the Sixth Circuit pointed to circumstantial evidence sufficient to establish a genuine dispute as to whether a causal connection existed between Evans's protected conduct and the adverse action taken against him.

> From the listing of "reasonable cause" on Evans's testing form, the date of testing only two days after his assistance was rendered and on the day Sublett was released, the delay in sending the results to the lab, his placement in 7 Cellhouse

10

> instead of 3 Cellhouse, the fact that others involved in the assistance were also tested and had "reasonable cause" listed as the purpose, and the failure to allow Evans to observe that proper testing procedures were followed and the chain of custody remained intact, a reasonable jury could conclude that Evans's protected conduct was a motivating factor in Defendants' administration of the drug test and extended placement of Evans in administrative segregation. This evidence also rebuts Defendants' claim that they would have taken the adverse action in the absence of the protected conduct, and is sufficient to preclude summary judgment on this claim.

*Evans*, 427 F. App'x at 446.

On remand, the Defendants attempt to rebut this evidence in order to demonstrate that they would have taken the same action against Evans in the absence of his protected conduct. To that end, the Defendants rely on the affidavit of Harry Vinson, the officer who administered the stick test to Evans on May 19, 2005. *See* Aff. Harry Vinson, DN 96-12. Through his sworn testimony Vinson states that he did not administer "any tests to William Evans in retaliation for allegedly expressing concerns related to Alando Sublett's stick test or for expressing any concerns related to drug testing procedures." *Id*. at ¶ 9. Furthermore, at the time he tested Evans, Vinson claims to have had no knowledge of any grievance that "William Evans sent to [Defendants] Rick Pershing, Byron Jasis, [or] Glenn Haeberlin regarding due process concerns related to inmate Alando Sublett's stick test." *Id.* at ¶ 12. Finally, Vinson "was not instructed to drug test William Evans by [Defendants] Rick Pershing, Bryon Jasis, or Glenn Haeberlin." *Id.* at ¶ 13.

While Vinson's sworn testimony is entitled to some weight, the Court finds that for the purposes of summary judgment it is insufficient to overcome the circumstantial evidence identified by the court of appeals. Two reasons counsel this outcome. First, upon a motion for summary judgment the Court must draw all reasonable inferences and resolve all ambiguities against the moving party. As identified by the Sixth Circuit, there is a substantial amount of

11

circumstantial evidence upon which a jury could draw a causal connection between Evans's protected conduct and the adverse action taken against him. Accordingly, the Court is not prepared to find that one self-serving affidavit produced *after* remand should be accorded controlling weight. Second, although Defendant Vinson's sworn statement is that he did not drug test Evans in retaliation for his protected conduct, the truth of the matter is that Vinson candidly states, "I do not recall the drug test that was administered to William Evans on or about May 19, 2005." *Id.* at ¶ 9. On one hand Vinson is clear that he took no retaliatory action against Evans, while at the same time acknowledging that he has no recollection of actually administering the test. Such equivocal speech counsels against a grant of summary judgment. At trial, the jury may well find Vinson's testimony credible and worthy of controlling weight. The jury, not the Court, is to be the judge of witness credibility, however, and in this case, it will be up to the jury to weigh the evidence in order to determine whether a causal connection exists between Evans's protected conduct and the adverse actions taken against him. Accordingly, the Defendants are not entitled to summary judgment on Evans's First Amendment retaliation claim because a genuine dispute exists regarding whether there is a causal connection between Evans's protected conduct and the adverse action taken against him.

## V.

Finally, the Defendants argue that even if they violated Evans's constitutional rights, they are entitled to qualified immunity because those rights were not "clearly established" at the time of the challenged conduct. The affirmative defense of qualified immunity has two elements. Federal and state officials are shielded from liability unless the plaintiff pleads facts showing that (1) the officials' conducted violated a constitutional right, and (2) that right was "clearly established" at the time of the violation. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "If the

law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id.* at 818-19.

The Court, viewing the evidence in a light most favorable to Evans, has determined that there is a genuine dispute regarding whether the Defendants violated his First and Fourth Amendment rights. Therefore, the Court must determine whether those rights were "clearly established" at the time of the Defendant's conduct.

Evans claims that the Defendants retaliated against him for providing legal assistance to Sublett in violation of his First Amendment rights. The Defendants have failed to argue that Evans's First Amendment rights were not "clearly established" at the time of their conduct. Instead, the Defendants focus their qualified immunity argument exclusively on Evan's Fourth Amendment claim. Because the Defendants have failed to argue that Evan's First Amendment rights were not clearly established, they have waived the defense of qualified immunity on this issue.

Nor are the Defendants entitled to qualified immunity on Evans's cause of action arising under the Fourth Amendment. As shown above, there is a genuine issue as to whether the drug test administered to Evans violated his Fourth Amendment rights. It is clearly established that drug tests fall within the protections of the Fourth Amendment, s*ee Pendleton*, 1995 U.S. App. LEXIS 35935, *5 (citations omitted), and "[n]on-random searches are constitutional if they are reasonable." *Evans*, 427 F. App'x at 443-44 (6th Cir. 2011) (citing *Bell*, 441 U.S. at 559). Therefore, Evans's Fourth Amendment rights were clearly established at the time of the Defendants' conduct, and they are not entitled to qualified immunity on this issue.

## CONCLUSION

The Defendants move the Court for summary judgment on the two remaining issues in

13

this case.  For all of the foregoing reasons, the Defendants' motion is DENIED.